**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ | ) |
| | ) |
| JOSEPH MICHAEL LADEAIROUS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 15-cv-00954 (ABJ) |
| | ) |
| JEFFREY A. ROSEN, *et al*.,[1] | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

**MEMORANDUM OPINION**

Defendants, the Attorney General of the United States and the United States Inspector General, have filed a motion pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) to dismiss plaintiff Joseph M. Ladeairous's lawsuit against them.  Plaintiff alleges that defendants misused the Foreign Intelligence Surveillance Act ("FISA"), 50 U.S.C. §§ 1810 *et seq*., and violated his First Amendment rights.  For the reasons explained in more detail below, the Court will grant the motion and dismiss the case.

**BACKGROUND**

**I.      Procedural History**

Plaintiff filed this matter on June 22, 2015.  On October 22, 2015, another court in this District, while screening this matter, *see* 28 U.S.C. § 1915A, entered a memorandum opinion, ECF No. 5, and order, ECF No. 6, dismissing the complaint without prejudice and denying plaintiff's application for leave to proceed *in forma pauperis* ("IFP"), finding that plaintiff had

---

[1]      Mr. Rosen is automatically substituted as defendant for his predecessor, pursuant to Fed. R. Civ. P. 25(d).

accumulated three-strikes under the strictures of 28 U.S.C. § 1915(g).  On November 4, 2015, plaintiff filed a notice of appeal, ECF No. 7, seeking review by the United States Court of Appeals for the District of Columbia Circuit.

On March 16, 2018, the District of Columbia Circuit, reversed and vacated the District Court's denial of IFP status, and remanded the matter.  *Ladeairous v. Sessions*, 884 F.3d 1172, 1176 (D.C. Cir. filed Mar. 16, 2018).  The District of Columbia Circuit found that plaintiff has only amassed two strikes, not three.  *See id.* at 1174–76.

Once remanded, plaintiff's IFP application was granted and the case was randomly assigned to this Court.  *See* Jan. 28, 2020 Ord., ECF No. 14.  Defendants filed the pending motion to dismiss, ECF No. 19, with accompanying memorandum ("MTD Mem."), plaintiff then filed an opposition ("Opp."), ECF No. 22, to which defendants filed a reply, [2] ECF No. 25.  This matter is now fully briefed for consideration.

## II.     Facts Presented

According to the complaint, plaintiff was in the custody of the New York State Department of Corrections ("NYDOC") from 1997, until his release on July 22, 2005.  Compl. ¶¶ 10, 11.  On September 7, 2009, he was taken into custody in Virginia, *id.* ¶ 12, and the following year, he was tried by jury and convicted in the Virginia Circuit Court (Norfolk County) on two counts of robbery and two counts of use of a firearm used in commission of a felony.  *See Commonwealth v. Ladeairous*, Nos. CR09003349-00, CR10000565-00, CR10000565-01, and CR10000565-02 (Va. Cir. Ct. Aug. 6, 2010).  Plaintiff asserts that, on October 22, 2010, he received a 44-year sentence, which he is currently serving.  Compl. ¶ 12.

---

[2]     Plaintiff also submitted a surreply, ("Surreply"), ECF No. 27, on October 7, 2020.  Even though neither the D.C. Local Rules nor the Federal Rules of Civil Procedure provide the right to file a surreply, and plaintiff did not seek leave to file, the Court accepted and has considered the filing.  *See* Oct. 8, 2020 Min. Ord.

Plaintiff's claims are all centered on his self-proclaimed status as an "active Irish republican political supporter in the U.S. from 2000 to present[.]" *Id.* ¶ 7. Plaintiff indicates that he has openly demonstrated his support for the Irish republican cause for approximately two decades. For example, he has purchased Irish republican books and materials, and subscribed, donated, and contributed to, Irish republican-affiliated media outlets, including the "Irish People newspaper" and the "An Phoblatch newspaper of Ireland[.]" *Id.* In exchange, he has continued to receive correspondence by email from some of those outlets regarding the political climate in Northern Ireland. He also submitted "articles of abuses of Irish Catholics in Northern Ireland" to national newspapers in the United States. *Id.* Plaintiff's primary focus is what he describes as the government's "continued de-politicalizing of the Irish republican political agenda in the U.S and the effects such has on Irish republican political supporters in the U.S." *Id.*

Also, plaintiff states that he has corresponded with "the office of the political party Sinn Fein and the Republican Prisoners Action Group in Dublin[,] Ireland" and proposed "ideas to Irish Northern Aid Committee[,]" otherwise known as "Noraid." *Id.* He has requested that these organizations assist him in halting alleged "abuses and injustices [that] plaintiff has suffered by the U.S. government . . . because of [his] support and interaction of their Irish republican political organizations in the U.S. and Ireland." *Id.* In similar efforts, plaintiff has attempted to correspond with several United States embassies, informing them of his personal tribulations, and generally "calling on them to aid in the reversing of the anti-Irish republican political sentiment their nation had placed in the U.S. government." *Id.*

According to plaintiff, these Irish republican newspapers and Noraid, have "been forced by the U.S. government to register as agents of a foreign power pursuant to Foreign Agents Registration Act (F.A.R.A.)" due to their affiliation with the Irish Republican Army ("IRA"). *Id.* ¶ 8. Plaintiff also contends that Sinn Fein, as well as "[t]he Provisional Irish

Republican Army (P.I.R.A.), the Continuity Irish Republican Army (C.I.R.A.)[,] and the Real Irish Republican Army (R.I.R.A.)[,] are all controversially designated by the U.S. State Department pursuant to 8 U.S.C. 1189 designations of a foreign terrorist organization (F.T.O.)." *Id.*

The gravamen of the complaint though, is that because of his relationship with some these organizations, plaintiff believes that he has long been the subject of government-orchestrated surveillance and persecution.  *See id.* ¶¶ 9, 10.  Specifically, plaintiff posits that he and all other open the Irish republican cause supporters in the United States, "fall under F.I.S.A. jurisdiction for providing material support to a F.T.O. pursuant to 18 U.S.C. 2339(B) . . . [and] 50 U.S.C. 1806(k)[.]"  *Id.* ¶ 9.  As a result, plaintiff surmises that he has been subject to continuing FISA "investigations and surveillances" coordinated by "federal[,] state[,] and local authorities formally and in[]formally without check due to the removal of the U.S. department of Justice Office of intelligence policy and review (O.I.P.R.)."  *Id.*

Plaintiff hypothesizes that this wide-scale government investigation has revealed itself in multiple ways throughout the years.  *See id.* ¶¶10–16.   He alleges that, while he was designated to NYDOC, he endured various forms of mistreatment, including: unfair placement in solitary confinement, forced starvation, and categorization as a "terrorist sympathizer."  *Id.* ¶ 10.  He believes that these actions were devised entirely as a form of retaliation for his status as an Irish republican ally, in a coordinated effort between New York authorities and the federal government.  *See id.*

He then alleges that "[o]nce released from [NYDOC] . . .  plaintiff would be the target of aggressive surveillances from 2005–2008[,] at which time plaintiff would experience a barrage of injustices as a pretext for plaintiff[']s Irish republican support."  *Id.* ¶ 11.  Plaintiff lists examples of these alleged injustices, including incidents of police brutality and additional "bogus" arrests

and criminal charges, which in turn resulted in more mistreatment while he was again in the custody of NYDOC, and subjected him to more solitary confinement, false accusations, and prison disciplinary charges.  Yet, he also contends that he was invited by the New York State Inspector General to participate in an investigation to apprehend a corrupt agent involved in plaintiff's ongoing FISA surveillance.  *See id*.  During this time, he claims that the State of New York improperly diagnosed him as mentally ill during this time and forced him to take psychotropic medication.  This turn of events allegedly had "drastic effects on plaintiff[']s marriage and family relationships[,]" eventually causing him to "flee from New York State to escape the abuses from law enforcement authorities in July 2009[.]"  *Id.*

Shortly thereafter, on September 7, 2009, plaintiff was taken into custody by authorities in Virginia.  *Id*. ¶ 12.  He was charged with robbery and assault, but he contends that those charges were merely a ruse so that authorities could interrogate him regarding his potential affiliation with the IRA.  *See id*.  He states that in Virginia, he "experience[d] abuses that mirrored those of New York State and City of Yonkers[,]" and he believes that law enforcement in New York and Virginia conspired together against him. *See id*.  Plaintiff alleges that he again faced continued interrogations and isolation while incarcerated in Virginia and awaiting trial.  He characterizes his trial as "defenseless," and claims that it resulted in a guilty verdict only because the state court purportedly colluded with the government and intentionally "den[ied] evidence and introduce[ed] frivolous evidence . . . not backed [by] modern science."  *See id.*

Plaintiff was designated to the Virginia Department of Corrections ("VDOC") to serve his sentence, and he states that he was immediately "told to sign a statement denouncing any Irish republican political support by a[n] organization investigator on April 1[,] 2011, which plaintiff refused to sign."  *Id.* ¶ 13.  He further states that he continues to suffer in isolation

and that prison officials still target him by tampering with his mail, forging his signature, and unfairly restricting his access to outside contacts.  He attributes all of this alleged mistreatment to the government's belief that he has "terror ties."  *See id.*

Plaintiff also recounts prior litigation that in this district and appeals to the D.C. Circuit, which outcomes he considers unfavorable. *See id*. ¶ 14. He equates this "blatant improper adjudication by federal courts[,]" to be founded in an overarching governmental scheme to intentionally preclude his "attempts to obtain evidence . . . to confront said injustices . . ." of "unconstitutional treatment by all federal, state[,] and local principalities [with which] plaintiff has had any contact[.]"  *See id.* ¶¶ 14–15, 17–18.

Plaintiff has also attempted to seek administrative relief with the DOJ Office of the Inspector General (OIG) and the Office of the Attorney General (OAG); from 2010 through 2015, he filed multiple complaints with both agencies, based on a "narrative of unconstitutional treatment by all federal, state[,] and local principalities . . . coinciding with the commencement and duration of plaintiff[']s interaction and support with Irish republican political organizations[.]"  *Id.* ¶¶ 16–17.  He also alleges that the OAG has actively participated in orchestrating this illegal FISA surveillance and the resulting dissemination of his information.  *See id.* ¶ 20.

Plaintiff complains that both OAG and OIG have informed him that they lack jurisdiction to respond to his requests for relief.[3]  *Id.* ¶ 18, 21.  He also contends that the OIG has failed to properly notify him "via public internet, radio, television or newspaper advertisement

---

[3]     Defendants acknowledge that plaintiff has contacted them several times, and that he has been repeatedly notified that he had not provided "information sufficient to allege issues raised within their respective jurisdictions."  MTD Mem. at 3; MTD Mem. Exs. 1–2, ECF No. 19-1.

. . . on the responsibilities, functions or how to contact [OIG] . . . or any [other government] official" regarding the appropriate method by which to file a FISA complaint.  Compl. ¶¶ 19, 22.

According to the complaint, defendants are intentionally obstructing "the justice of exposure of such abuses because of defendants['] fear of civil liability and fear of the political ramifications of exposing such horrific abuses to Irish republican political supporters in the U.S. . . . by the U.S. government, would have on the Northern Ireland peace process." *Id.* ¶¶ 20–1, 24–6.  Plaintiff also contends that by ignoring his administrative complaints, defendants have concomitantly violated his First Amendment right to petition the government for redress of grievances, *see id.* ¶¶ 21–2, and violated the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act (the "Patriot Act"), Pub. L. No. 107–56 § 1001, 115 Stat. 272, 392 (2001), *see id.* ¶¶ 5, 18–19, 21–2, 26–7.

Moreover, plaintiff alleges that defendants are deliberately inhibiting his First Amendment right to "freedom of political association, speech, expression and beliefs," *see id.* ¶¶ 20–2; the government has plotted to hinder his ability to support Irish republicanism, by way of FISA and the Terrorist Surveillance Program, which was, according to plaintiff, "exposed by National Security Agency contractor Edward Snowden," *id.* ¶ 20.

Based on all of these circumstances, plaintiff demands both injunctive and declaratory relief.  *See id.* ¶¶ 23–7.  He seemingly predicates his complaint on FISA, *id.* ¶ 1, the Declaratory Judgment Act, *id.*, the Patriot Act, *id.* ¶¶ 5, 18–19, 21–2, 26–7, and the First Amendment, *id.* ¶¶ l6–18, 20–2.  He seeks: (1) an order directing the OAG to formally notify all individuals under FISA surveillance that they are being monitored, in order to ensure that FISA "investigation[s], surveillances, and [the] coordination of federal, state[,] and local law enforcement w[ere] lawful[,] and all procedures [were] conducted properly [p]ursuant to [] 50 U.S.C. 1806(e) . . . to be conducted ex parte and in camera pursuant to F.I.S.A. 50 U.S.C. [] 1806 (f)[,]" *id.* ¶ 23; (2) an

injunction prohibiting the OAG from "coordinating" with "federal, state[,] and local law enforcement[,]" conducting any further FISA investigations or surveillance involving him, and barring the OAG from "improperly and unlawfully disseminating plaintiff's information of plaintiff to law enforcement and civilians in defendants attempts to improperly deter plaintiff[']s Irish republican political support[,]" *id.* ¶¶ 24–5; (3) an order mandating that the OIG investigate his FISA abuse complaints against the OAG and other co-conspirators within "federal, state, and local law enforcement[,]" *id.* ¶ 26, and; (4) an order requiring the OIG to publicly document instructions to individuals seeking to file agency complaints regarding known FISA violations, *see id.* ¶ 27.

## STANDARDS OF REVIEW

In evaluating a motion to dismiss under either Rule 12(b)(1) or 12(b)(6), the Court must "treat the complaint's factual allegations as true and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.' " *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal citation omitted), quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979); *see also Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011), quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005) (applying principle to a Rule 12(b)(1) motion). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002) (Rule 12(b)(6) case); *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015) (Rule 12(b)(1) case).

### I.  Subject Matter Jurisdiction

Under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Shekoyan*

*v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002), *aff'd*, 409 F.3d 414 (D.C. Cir. 2005), *cert. denied*, 546 U.S. 1173 (2006).  "Federal courts are courts of limited jurisdiction," and the law presumes "that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction.").  "[B]ecause subject-matter jurisdiction is 'an Art[icle] III as well as a statutory requirement . . . no action of the parties can confer subject-matter jurisdiction upon a federal court.' " *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003), quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

Subject matter jurisdiction may not be waived, and "courts may raise the issue *sua sponte*." *NetworkIP, LLC v. FCC*, 548 F.3d 116, 120 (D.C. Cir. 2008), quoting *Athens Cmty. Hosp., Inc. v. Schweiker*, 686 F.2d 989, 992 (D.C. Cir. 1982).  Indeed, a federal court must raise the issue because it is "forbidden . . . from acting beyond [its] authority, and 'no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Id.*, quoting *Akinseye*, 339 F.3d at 971.

When reviewing a challenge pursuant to Rule 12(b)(1), a court may consider documents outside the pleadings to assure itself that it has jurisdiction.  *See Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947); *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987) (holding same); *see also Artis v. Greenspan*, 223 F. Supp. 2d 149, 152 (D.D.C. 2002) ("A court may consider material outside of the pleadings in ruling on a motion to dismiss for lack of venue, personal jurisdiction or subject-matter jurisdiction.)."  By considering documents outside the pleadings when reviewing a motion to dismiss pursuant to Rule 12(b)(1), a court does not convert the motion into one for summary judgment; "the plain language of Rule 12(b) permits only a 12(b)(6) motion to be converted into

a motion for summary judgment" when documents extraneous to the pleadings are considered by a court. *Haase*, 835 F.2d at 905.

## II. Failure to State a Claim

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In *Iqbal*, the Supreme Court reiterated the two principles underlying its decision in *Twombly*: "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 678–79, citing *Twombly*, 550 U.S. at 555–56.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678, citing *Twombly*, 550 U.S. at 556. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*, quoting *Twombly*, 550 U.S. at 556. A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*, citing *Twombly*, 550 U.S. at 555.

Where the action is brought by a *pro se* plaintiff, a district court has an obligation "to consider his filings as a whole before dismissing a complaint," *Schnitzler v. United States*, 761 F.3d 33, 38 (D.C. Cir. 2014), citing *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999), because such complaints are held "to less stringent standards than formal pleadings drafted by lawyers[,]" *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  In ruling upon a motion to dismiss

for failure to state a claim, a court is limited to considering the facts alleged in the complaint, any documents attached to or incorporated in the complaint, matters of which a court may take judicial notice, and matters of public record. *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F. 3d 621, 624 (D.C. Cir. 1997); *see also Vanover v. Hantman*, 77 F. Supp. 2d 91, 98 (D.D.C. 1999), *aff'd*, 38 Fed. Appx. 4 (D.C. Cir. 2002) ("[W]here a document is referred to in the complaint and is central to plaintiff's claim, such a document attached to the motion papers may be considered without converting the motion to one for summary judgment."), citing *Greenberg v. The Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999).

## ANALYSIS

### I.    The Court lacks jurisdiction over the entire complaint.

#### A.  The Court lacks jurisdiction to hear a patently insubstantial case.

The Supreme Court has held repeatedly that "the federal courts are without power to entertain claims otherwise within their jurisdiction if they are so attenuated and unsubstantial as to be absolutely devoid of merit." *Hagans v. Lavine*, 415 U.S. 528, 536–37 (1974) (internal quotation marks and citation omitted).  Dismissal is appropriate under Rule 12(b)(1) when a complaint is so "patently unsubstantial" that it presents no federal question suitable for decision. " *Lewis v. Bayh*, 577 F. Supp. 2d 47, 54 (D.D.C. 2008), quoting *Hagan*s, 415 U.S. 528, 536–37 (1974). It is true that the D.C. Circuit has cautioned that claims rejected on these grounds cannot simply be "doubtful or questionable – they must be essentially fictitious." *Best v. Kelly*, 39 F.3d 328, 330 (D.C. Cir. 1994), citing *Hagans*, 415 U.S. at 537 (internal quotations omitted). But according to the Court of Appeals in the *Best* opinion, claims that may fairly be considered to be patently insubstantial include those that advance "bizarre conspiracy theories." *Id.*

Plaintiff's FISA allegations fall squarely within that category. *See Tooley v. Napolitano*, 586 F.3d 1006, 1010 (D.C. Cir. 2009) (listing "surveillance and harassment" cases dismissed "for patent insubstantiality" and affirming trial court's dismissal of complaint alleging a "massive" seven-year government surveillance plot in retribution for plaintiff's political views, involving wiretaps, tracking devices, and law enforcement shadowing). The complaint alleges a sprawling conspiracy spanning a 21-year period, reaching from the highest levels of the federal government to local law enforcement officials responsible for plaintiff's arrest for various state law offenses and the conditions of his detention at a number of state prisons, all allegedly in retribution for his support of the Irish republican cause.

 The state of the record did not improve when plaintiff had the opportunity to clarify his allegations in his opposition; instead of focusing the Court on actionable claims, he discussed the overall objectives of the FISA statute at length, *see* Opp. at 6, 10–11; Surreply at 3, 5–6, and he laid out his understanding of the economic and political motivation behind the U.S. government's position on Irish republicanism and decried what he sees as the government's efforts to oppose socialism and weaken Northern Ireland in order to strengthen its alliance with England. *See* Opp. at 6, 9–10, 12–15.  None of this served to identify a federal question suitable for the Court's resolution.

The rest of the docket strengthens the overall impression that plaintiff is simply using this case to give voice to vague and unsubstantiated conspiracy theories. One example of plaintiff's mindset is his response to defendants' request for a brief extension, which proposed a new filing deadline of September 11, 2020.  Surreply at 7; *see* Extn. Mot, ECF No. 24 at 1; Aug. 3, 2020 Min. Ord. (granting request).  According to plaintiff, this unremarkable request was a threatening "message" frequently used against litigants in cases involving Irish republicanism.  *See* Surreply

at 7–8.  He also complains that soon after defense counsel – in the U.S. Attorney's Office in Washington, DC – became aware of the pendency of the complaint, the Department of Corrections in Craigsville, Virginia assigned him undesirable cellmates.  *See id.* at 8.  Plaintiff views this as retaliation for filing the lawsuit and yet another example of a multi-level government conspiracy.

As the D.C. Circuit pointed out with approval in *Tooley,* similar conspiratorial claims based on alleged unlawful FISA surveillance have not fared well in this district.  *See, e.g., Roum v. Fenty*, 697 F. Supp. 2d 39, 42–3 (D.D.C. 2010) (dismissing FISA, Patriot Act, and First Amendment claims under Fed. R. Civ. P. 12(b)(1) where plaintiff alleged FISA surveillance "over a period spanning more than ten years").  In *Roum,* the court observed that the plaintiff's claims were predicated on a "vast and ongoing conspiracy . . . involving numerous federal and local agencies and officers," *id.* at 42, which required the Court to imagine a government conspiracy of great "extent and sophistication[,]" which simply "strains credulity," *id.* at 43.

The fact that plaintiff also invokes the Constitution does not make his complaint any more justiciable.  Plaintiff alleges that his "freedom of political association, speech, expression[,] and beliefs,"  and his right to support the Irish Republican cause have been impeded by the alleged long-term surveillance and information gathering.  *See* Compl. ¶¶ 20–2.  He adds that defendants have infringed his "right to petition [the] government for the redress of grievances," and for that, he points to their failure to take further action on his administrative complaints about the misuse of FISA.  *See id.*

In other words, as in *Roum*, plaintiff's First Amendment claims "are entwined with his conspiracy allegations[;] they are "one more item on the laundry list of wrongful acts and conclusory allegations that comprise the complaint." 697 F. Supp. 2d at 42–3, citing *Richards v. Duke University*, 480 F. Supp. 2d 222, 233 (D.D.C. 2007) (internal quotation marks omitted).  In

similar cases in this district, where the plaintiffs alleged that defendants, through concerted government manipulations, violated their First Amendment rights "based on long-term warrantless [FISA] surveillance and unlawful interception[,]" resulting in unfair proceedings and the denial of free expression, the constitutional claims were also dismissed as frivolous. *See Baszak v. FBI*, 816 F. Supp. 2d 66, 68–9 (D.D.C. 2011), citing *Newby v. Obama*, 681 F. Supp. 2d 53, 54–56 (D.D.C. 2010) (dismissing FISA and First Amendment claims arising from a government conspiracy theory as patently insubstantial).

### B.  Plaintiff has failed to establish standing to pursue his claims.

Plaintiff grounds his complaint, in part, on FISA. Compl. ¶ 1. Defendants urge the Court to dismiss the case for lack of subject matter jurisdiction on the grounds that plaintiff lacks standing to raise such a claim, MTD Mem. at 7, and the Court agrees that this is an independent basis for an order under Rule 12(b)(1).

 "To state a case or controversy under Article III, a plaintiff must establish standing." *Ariz. Christian Sch. Tuition Org. v. Winn*, 131 S. Ct. 1436, 1442 (2011); *Lujan*, 504 U.S. at 561. Standing is a necessary predicate to any exercise of federal jurisdiction; if it is lacking, then the dispute is not a proper case or controversy under the constitution, and federal courts have no subject matter jurisdiction to decide the case. *Dominguez v. UAL Corp.*, 666 F.3d 1359, 1361 (D.C. Cir. 2012).  A plaintiff must demonstrate standing for each claim he asserts.  *Daimler-Chrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 185 (2000).

To establish constitutional standing, a plaintiff must show that (1) he has suffered an "injury-in-fact"; (2) the injury is "fairly traceable" to the challenged action of the defendant; and (3) it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable

14

decision." *Lujan*, 504 U.S. at 560–61 (internal quotation marks omitted); *see also Laidlaw*, 528 at 180–81 (2000).  To show injury in fact, a plaintiff must demonstrate that he "suffered an invasion of a legally protected interest that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016), as revised (May 24, 2016), quoting *Lujan,* 504 U.S., at 560 (internal quotation marks omitted).  *See also Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279, 1293 (D.C. Cir. 2007), quoting *Lujan,* 504 U.S. at 560 (the injury must be "certainly impending and immediate – not remote, speculative, conjectural, or hypothetical").

In *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013)*,* the Supreme Court held that individuals who believed themselves to be the likely future subjects of FISA surveillance lacked standing to challenge the constitutionality of the Act and obtain prospective injunctive relief because they could not satisfy the *Lujan* requirements. It emphasized that the "threatened injury must be certainly impending to constitute injury in fact," *id,* quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990), and concluded that the "subjective fear of surveillance does not give rise to standing." *Id.* at 418. In addressing the insufficiency of the showing of imminent harm, the Court noted that the *Clapper* plaintiffs "merely speculate and make assumptions" about interception under FISA, and that observation pertains here as well.  *Id.* 411–12. Plaintiff also seeks injunctive relief, but he has not alleged facts that would indicate that he suffered an actual injury in the past or that one is imminent; what we have is a complaint laying out mere fears and suspicions.

This lack of an injury in fact that is actual or imminent and not merely conjectural also dooms plaintiff's requests for injunctive relief based on the First Amendment.  To the extent those claims are separate from the FISA allegations, plaintiff lacks standing to bring them.

In his opposition to the government's motion, plaintiff does make a fair point: FISA liability claims are difficult to pursue because individuals subjected to these investigations "never learn that their homes or offices have been searched or that their communications have been intercepted." Opp. at 4; *see* Surreply at 4.  He cites a decision from the District of Oregon, *Mayfield v. United States*, 504 F. Supp. 2d 1023 (D. Or. 2007) (finding 50 U.S.C. §§ 1804 and 1823 unconstitutional as violative of the Fourth Amendment), Opp. at 4, but that opinion has since been vacated and superseded by the Ninth Circuit, 599 F.3d 964 (9th Cir. 2010), *cert. denied*, 562 U.S. 1002 (2010).  In any event, while it is true that it may be challenging to base a claim on actions that are inherently clandestine, plaintiff bears the burden of pointing to some facts to indicate that his concerns are based on more than mere conjecture, and that he has not done.

### C. The Complaint fails to state a claim under the Foreign Intelligence Surveillance Act.

Even if plaintiff had somehow overcome the standing hurdle, he has failed to plead a FISA claim.  Congress provided in 18 U.S.C. § 2712 that "any person who is aggrieved by any willful violation" of certain sections of the Foreign Intelligence Surveillance Act may bring an action for money damages in the U.S. District Court. [4] 18 U.S.C. § 2712(a).  The FISA statute defines an "aggrieved person" as "a person who is the target of an electronic surveillance or any other person

---

[4]      In his complaint, plaintiff specifically requests equitable relief.  *See* Compl. ¶¶ 23–7. To the extent he invoked the statute in an effort to pursue money damages, he has failed to exhaust his administrative remedies, and the government moved to dismiss any damages claims on that basis. MTD Mem. at 7–8.  Section 2712(b) requires that "[a]ny action against the United States under [FISA] may be commenced only after a claim is presented to the appropriate department or agency under the procedures of the [Federal Tort Claims Act]," 18 U.S.C. § 2712(b), and this exhaustion requirement is "a mandatory prerequisite" to filing suit, *see GAF Corp. v. United States*, 818 F.2d 901, 904–05 (D.C. Cir. 1987); *see also Voinche v. Obama*, 744 F. Supp. 2d 165, 174 (D.D.C. 2010) (dismissing FISA claims for failure to exhaust administrative remedies), *aff'd*, 428 Fed. Appx. 2 (D.C. Cir. 2011).  Plaintiff did not contest this point, *see* Opp. at 3, and the Court finds that it lacks jurisdiction over any intended claims for money damages under FISA.

whose communications or activities were subject to electronic surveillance." 50 U.S.C. § 1801(k). "Electronic surveillance" is defined as the acquisition of wire or radio communications, or the installation of a surveillance device to monitor and acquire information. *Id.* § 1801(f); *see also Fagaza v. FBI*, 965 F.3d 1015, 1030–31 (9th Cir. 2020) (explaining the necessity and requirements for plausibly alleging a cause of action pursuant to the definitions in the FISA statutory text); *see also Bae v. Wynn*, No. 2:14–cv–00150 (RFB) (NJK), 2015 WL 1470654, at *3–*4 (D. Nev. Mar. 31, 2015) (dismissing where plaintiff had failed to clearly state these FISA elements).

While plaintiff advances the assertion that he has been surveilled for many years by various government actors, and that defendants are responsible for nearly every misfortune he has faced in the past two decades, he has failed to allege that he was the subject of electronic surveillance under the statute, or that he is an otherwise aggrieved person.  He does not specifically allege that defendants obtained any particular wire or radio communications, or that they installed any device to monitor and obtain information, and there are no facts alleged that would enable the Court "to reasonably infer that Defendants have committed unlawful electronic surveillance." *Bae,* 2015 WL 1470654, at *3. To the extent the plaintiff here identifies himself as a target of surveillance, his allegations are purely conclusory, and even viewing the complaint in the light most favorable to him, the complaint fails to satisfy the *Iqbal* standard. 556 U.S. at 679; *see Bae*, 2015 WL 1470654 at *3 (plaintiff's complaints that his "privacy felt compromised and that he is experiencing signs of being under . . . surveillance[,] are not specific enough to lead to an inference that Defendants are liable.")

Second, the complaint has failed to put forth sufficient credible allegations, as opposed to broad conclusions, to establish subject matter jurisdiction, let alone to provide any plausible basis that defendants either obtained or disclosed his private information pursuant to a FISA warrant.

Alleging the "mere possibility of misconduct" is fundamentally insufficient. *See Iqbal*, 556 U.S. at 679.  Plaintiff's inventory of defendants' vague alleged misbehaviors and his personal suspicions about the government, predicated only upon his profound personal belief that "his privacy felt compromised and that he is experiencing signs of being under . . . surveillance[,] are not specific enough to lead to an inference that Defendants are liable." *Bae*, 2015 WL 1470654, at *3.  Consequently, and for all of these reasons, plaintiff's FISA claims shall be dismissed.

### D.  Patriot Act Claims

Plaintiff also alleges that defendants violated the Section 1001 of the Patriot Act, *see* Compl. ¶¶ 5, 18–19, 21–2, 26–7. That provision directs the DOJ Office of the Inspector General to appoint a single official to handle all civil rights and civil liberties abuse claims, *see* Pub. L. No. 107–56 § 1001(1), and that official must provide semiannual reports to Congress on those claims, *see id.* § 1001(3).  Contact information[5] for this official shall be made available to the "public through the internet, television, and radio." *Id.* § 1001(2).

But plaintiff points to no statutory provision that creates a private cause of action to enforce this provision and no authority that supports his effort to pursue this claim. Courts have generally "concluded that the Patriot Act does not provide for a private right of action for its enforcement." *Ray v. First Nat'l Bank of Omaha*, 413 Fed. Appx. 427, 430 (3d Cir. 2011); *see also Ziglar v. Abassi*, 137 S. Ct. 1843, 1862 (2017) (noting that the Patriot Act requires the OIG to review and

---

[5]     It is notable that plaintiff alleges that he submitted his complaints through the proper OIG channels, *see* Compl. ¶¶ 16–18; MTD Mem. at 3; MTD Mem. Exs. 1–2, and this suggests that the necessary contact information was available to him.  He seems to infer from OIG's response that it lacked jurisdiction to resolve his complaints that the agency failed to publicize the proper means to submitting them, *see* Compl. ¶¶ 16–21, but the letters referenced in the complaint simply reflect that OIG lacked sufficient information to take action and that it forwarded his concerns directly to a more appropriate agency based on the specific nature of the allegations, *see* MTD Mem. at 3; MTD Mem. Exs. 1–2.

report semi-annually to Congress on abuses of civil rights and civil liberties, but at no point did Congress extend a private cause of action) (citation omitted); *Grady v. Dep't of Defense*, Case No. 16-14293, 2017 WL 35531, at *5 (S.D. Fla. Jan. 24, 2017) (dismissing Patriot Act claims arising out of FISA violations) (collecting cases), *aff'd*, 702 Fed. Appx. 929 (11th Cir. 2017).

Plaintiff also alleges that the OIG and OAG violated the Patriot Act when they failed to provide relief and conduct investigations into his administrative complaints. *See* Compl. ¶¶ 5, 17–18, 21, 26.   However, plaintiff cannot, under the Patriot Act or otherwise, compel a law enforcement agency to institute action by filing a complaint in this Court. The Supreme Court has stated clearly: "an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion." *Heckler v. Chaney*, 470 U.S. 821, 831 (1985).

Thus, the Court lacks the subject matter jurisdiction to consider plaintiff's objections to the OIG's compliance with the Patriot Act or to compel OIG or OAG to further investigate plaintiff's agency complaints.

### E.  Declaratory Judgment Act

Plaintiff also invokes the Declaratory Judgment Act, 28 U.S.C. § 2201–02.[6]   However, "the operation of the Declaratory Judgment Act is procedural only . . . and enlarges the range of remedies but not federal courts' jurisdiction." *Trudel v. SunTrust Bank*, 223 F. Supp. 3d 71, 90–1 (D.C. Cir. 2016) (internal quotation marks and citation omitted). "The availability of a declaration as relief 'presupposes the existence of a judicially remediable right' that falls within federal

---

[6]     In the introduction to the complaint, plaintiff briefly mentions the Federal Communications Act ("FCA"), 47 U.S.C. § 605(e), Compl. ¶ 1, but he never cites the FCA again, and he does not specify that he is pressing a claim for civil damages under Section 605 of the FCA – indeed, the complaint only seeks injunctive relief.

jurisdiction." *Id.* at 91, citing *Schilling v. Rogers*, 363 U.S. 666, 677 (1960). Since plaintiff has failed to establish jurisdiction under FISA or another statute, his reference to the Declaratory Judgment Act will not avert a dismissal, because it "is not an independent source of federal jurisdiction." *See Schilling*, 363 U.S. at 677.   And any claims plaintiff purports to base on the Declaratory Judgment Act alone must be dismissed for lack of jurisdiction.

### F.  Bivens Claims

Finally, plaintiff appears to ground the claims seeking to vindicate his constitutional rights on the Supreme Court's decision in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Compl. ¶ 1. But *Bivens* is a judicially created doctrine that provided a means for the recovery of money damages from a defendant sued in an individual capacity. *See Davis v. Passman*, 442 U.S. 228, 245 (1979) (under *Bivens*, "it is damages or nothing.") (citation and internal quotation marks omitted); *Simpkins v. District of Columbia Gov't*, 108 F.3d 366, 369 (D.C. Cir. 1997) ("*Bivens* actions are for damages . . . if the [ ] defendant is found liable, he becomes personally responsible for satisfying the judgment[.]"). Here, as noted before, plaintiff is seeking injunctive relief, and the bulk of his claims are against individuals acting in their official capacity. This makes the doctrine unavailable as a means to establish jurisdiction over the complaint. [7]

Moreover, plaintiff has not alleged facts to support a claim that he has been denied his right to petition for redress. He alleges that he has filed numerous complaints with both defendant agencies. *See* Compl. ¶¶ 16–18.  While he may have been successful in obtaining the relief he

---

[7]      The Court also notes the *Bivens* doctrine only limitedly applies to First Amendment claims, and the circumstances in which courts have permitted those actions to proceed have, for example, applied to actions involving retaliatory arrest claims. *See Dellums v. Powell,* 566 F. 2d 167 (D.C. Cir. 1977).

requested, that is not the same thing as being denied the right to ask for it. *See Patchak v. Jewell*, 828 F.3d 995, 1004 (D.C. Cir. 2016) (holding that the First Amendment does not guarantee a right to "a success outcome in [plaintiff's] petition, or even for the government to listen or respond to his complaints."), citing *Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) and *We the People Found., Inc. v. United States*, 485 F.3d 140, 141 (D.C. Cir. 2007). Therefore, for these reasons in addition to those discussed above, the First Amendment claims must be dismissed for lack of jurisdiction.

## CONCLUSION

Plaintiff has failed to establish this Court's subject matter jurisdiction over his FISA, First Amendment, Patriot Act, and Declaratory Judgment Act claims. Moreover, the Court lacks the authority to order the relief plaintiff seeks.  Further, plaintiff has failed to state a FISA claim, a Patriot Act claim, or a First Amendment violation. For all of these reasons, the Court will grant the Defendants' Motion to Dismiss the Complaint, ECF No. 19.  A separate Order will issue.

AMY BERMAN JACKSON
United States District Judge

Date: February 24, 2021